UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| vs. | : | CRIMINAL NO. 3:15CR206 (JAM) |
| JONATHAN RHOADES | : | May 30, 2017 |

**DEFENDANT'S MOTION AND MEMORANDUM REGARDING RESTITUTION**

The Defendant, Jonathan Rhoades, through undersigned counsel, submits this motion and memorandum regarding restitution. The Defendant respectfully requests that the Court honor his agreement to pay restitution to four of the victims: $1000 for John Doe IV of the "8kids" series; $1000 for the victim of the "Cindy" series; $1000 for the "Pia" of the "Sweet Sugar" series; and $1000 for the victim of the "Vicky" series.

As for the remaining victim of the "Jessica" series, the Defendant objects to the demand for an order of restitution on the part of her counsel and the government. Mr. Rhoades does not dispute that Jessica was grievously harmed by the man who abused her and documented that abuse. Nor does he dispute the fact that the knowledge that men continue to distribute and view those images causes her ongoing harm, distinct from and in addition to the harm of the actual abuse, or that he is one of those men, or Jessica is a victim of his offense for restitution purposes, and that he is obligated to pay some amount of restitution in this case. He merely disputes the amount owed.

**Background**

On January 3, 2017, Mr. Rhoades appeared before this Honorable Court and pleaded guilty to count one of the Indictment, charging him with distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2). Mr. Rhoades admitted his crime and accepted responsibility for his

conduct. As this Honorable Court recalls, he appeared for sentencing on March 29, 2017, chastened, deterred and deeply remorseful for his misconduct and fully aware in the wrongfulness of his actions. The Court heard vigorous arguments from the parties and sentenced Mr. Rhoades to 108 months of incarceration and a lifetime term of supervised release. A restitution hearing was scheduled for June 22, 2017.

Since last appearing before this Court the Defendant worked to resolve the restitution issue with six victims requesting restitution in this case. As noted in the parties' joint motion, the defendant's counsel contacted each of the victims' attorneys attempted to reach a negotiated settlement to their restitution requests. (Dkt. 99). Counsel negotiated with five attorneys, four with starting amounts ranging from $2000 to $2500. The fifth, Attorney Elaine Lenahan, counsel for the "2 Crazy Gurls Series," after hearing the merits of Mr. Rhoades arguments, withdrew her demand for restitution.

However, chief counsel for the remaining victim, Jessica, avoided attempts to effectively communicate with the undersigned and negotiate a resolution.

**Applicable Law**

In *Paroline v. United States*, the Supreme Court laid out a rule for assessing restitution issues in cases of possession of child pornography: "where it can be shown both that a defendant possessed a victim's images and that a victim has outstanding losses caused by the continuing traffic in those images but where it is impossible to trace a particular amount of those losses to the individual defendant by recourse to a more traditional causal inquiry, a court applying § 2259 should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses." *Paroline v. United States*, 134 S. Ct. 1710, 1727,

188 L. Ed. 2d 714 (2014). In order to do so, a sentencing court "might, as a starting point, determine the amount of the victim's losses caused by the continuing traffic in the victim's images … then set an award of restitution in consideration of factors that bear on the relative causal significance of the defendant's conduct in producing those losses." *Id*. at 1728. In other words, the losses caused by the ongoing distribution should be considered as a discrete amount, separate from the losses suffered as a result of the original abuse. The sentencing court might then consider factors such as:

--the number of past criminal defendants found to have contributed to the victim's general losses;

--reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses;

--any available and reasonably reliable estimate of the broader number of offenders involved (most of whom will, of course, never be caught or convicted);

--whether the defendant reproduced or distributed images of the victim;

--whether the defendant had any connection to the initial production of the images;

--how many images of the victim the defendant possessed;

--and other facts relevant to the defendant's relative causal role.

*Id*.

**I. The Court cannot set out on the more detailed calculation of restitution owed by the Defendant until the baseline figure – "outstanding losses caused by the continuing traffic in those images" can be determined.**

The attorney representing Jessica states in his restitution demand that he was "recently retained by Jessica and is in the process of preparing a full accounting of her losses. This involves a forensic examination and economic computation – in order to pay for he psychologists and

economist to fully substantiate her losses. The government, in citing the attorney's demand, calculates Jessica's economic losses at $35,100, representing the cost of therapy to date of $10,000, the cost to retain a forensic psychologist and economist of $20,000, and attorney's fees and costs at $5100. (Dkt. 102).

Yet, the demand makes no effort to distinguish the portion of those losses attributable to the original abuse and those losses attributable to the ongoing distribution of those images. Such a division is required by the text of *Paroline*. The fact that the Jessica series is new to the victim restitution system does not negate the *Paroline* requirements.

The government notes that to date four federal defendants have been ordered to pay restitution to Jessica. (Dkt. 102). Three restitution orders of $2000 each, and one for $4000, which averages the amount of restitution orders at $2500. The government further indicates that the conviction in each of the four cases was classified as receipt but no other details are known as to how many images of Jessica were possessed or if there was any evidence of distribution. (Dkt. 102).

Undersigned counsel reviewed the dockets of the four defendants and was only able to determine that the attorneys for Jessica stipulated to a $2000 restitution amount in the Eastern District of Louisiana case, 15-CR-216. Still, here the government finds an $8000 restitution order as reasonable. At sentencing in the 15-CR-216 matter, the defense argued that coupled with the stipulation – the agreement must be limited to mirror the district's "general rule":

> The general rule is $1,000 for victims in these particular cases who are represented by the public defender's office, $2,000 for those represented by private counsel.
> Transcript of Sentencing, 15-CR-26, at dkt. 32.

As the Ninth Circuit found recently:

> an original abuser is responsible for harms caused by his actions, including ongoing harms; distributors and possessors of images of those actions commit separate

> wrongs with separate, albeit awful, harmful consequences of their own. Moreover, it is logical to separate the two. If an original abuser had stayed in his own clandestine and sick little world, a terrible trauma would have been inflicted upon the victim, and the abuser would have to atone for all of the consequences of that wrongdoing. When distribution of images is added, an original abuser (or another person) would commit and put in motion a whole different set of abuses. Those who later participate in distribution or possession, especially at a more remote time, are part of a distribution crime, but not of the physical-abuse crime. Galan's offenses were those of a later participant; he had nothing to do with the original abuse.

*United States v. Galan*, 804 F.3d 1287, 1290 (9th Cir. 2015). *See* also *United States v. Dunn*, 777 F.3d 1171, 1181–82 (10th Cir. 2015) (restitution cannot be based on an expert report that did not disaggregate harm of distributor/possessor from that of the original abuse); *United States v. Rogers*, 758 F.3d 37, 39–40 (1st Cir. 2014) (per curiam). In *United States v. Miner*, 617 F. App'x 102, 103 (2d Cir. 2015) (unpublished summary order), the Second Circuit declined to mandate a "detailed accounting" of the percentage of harm caused by the original abuse versus that caused by the defendant in a receipt case, but some differentiation was required.

The Defendant is not contesting that a portion of Jessica's harm, and thus her future expenses, is attributable to the conduct of those who distribute, receive and possess the images in question. But there must be some attempt, however broad in scope, to differentiate those losses from those attributable to her original abuse. In that regard, the Defendant notes that in *United States v. Kugler*, No. CR 14-73-BLG-SPW, 2016 WL 816741, at *2 (D. Mont. Feb. 29, 2016), a district court rejected a claim from victims other than Jessica that the original abuse accounted for 10% of the harm to those victims and the ongoing distribution 90%. The court in *Kugler* also noted that "The United States Senate unanimously passed the Amy and Vicky Child Pornography Victim Restitution Improvement Act of 2015, on February 2, 2015, see S. 295, 114th Cong. (2015); H.R. 595, 114th Cong. (2015), wherein the original abuser in a child pornography case is responsible for $250,000 in damages to a victim, a distributor is responsible for $150,000 in damages, and a

possessor is responsible for $25,000 worth of damages. *Id*. at Sec. 3(c)(2). In other words, the Senate thought it appropriate to hold the original abuser ten times more responsible for the victim's loss than the possessor of the images." *Id*. at *3.

**II. Even if the base level of losses can be shown, Mr. Rhoades' proper share under the *Paroline* standard would be quite low.**

*Paroline* cited seven factors that might be used to determine a defendant's share of overall distributor/possessor liability. They all militate for a lower level of liability than the award sought by the victim's counsel, and the government, as can be seen by reviewing them:

--"The number of past criminal defendants found to have contributed to the victim's general losses." A minimum of 4 persons have been convicted of possessing images of Jessica since 2015. *See* Government's Appendix, Dkt 102. Thus, based on the government's representations, Mr. Rhoades is only the fifth convicted defendant to date. The unfortunate fact is there will be more in the future, which stands to limit the amount attributable to this Defendant – at this time.

--"Reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses." That number is simply unknowable, but some kind of projection of the figures from the above level over time would be a decent approximation.

--"Any available and reasonably reliable estimate of the broader number of offenders involved (most of whom will, of course, never be caught or convicted)." Neither Jessica's attorney nor the government have made attempts at a reliable estimate.

--"Whether the defendant reproduced or distributed images of the victim." Mr. Rhoades possessed and distributed 2 of Jessica's images, for a total of 32 times. There were 80 "requests" for those images. The government, however, does not provide any evidence regarding whether images were shared with 32 different people; rather parenthetically it adds, "that the Government does not assert

that the defendant had to affirmatively accept or reject the requests, but that the E-mule network may be programed to accept or reject a request based upon the available bandwidth and speed of the upload or download." Moreover, the government cautions, "information relating to the demand for the images…does not suggest the defendant has any higher or lesser culpability based on the number of accepted or rejected requests."

--"Whether the defendant had any connection to the initial production of the images." Mr. Rhoades had no such connection.

--"How many images of the victim the defendant possessed." The prosecution identified only two images of Jessica as being present on all the computer media seized in this case.

--Any "other facts relevant to the defendant's relative causal role." None are apparent.

As such, Mr. Rhoades was one of 5 defendants convicted so far of possessing these images, out of more who possessed them, discounting any future convictions. Because Mr. Rhoades' liability, as someone who possessed 2 images, as opposed to multiple images, distributed 32 times is equal to the 4 other defendants of which the government provided no relevant data, then his share should be equal to what has been ordered thus far. That is, the Court's Order should be consistent with the range of figures in the Government's Appendix. As previously noted the amounts are 3 restitution orders for $2000, and one for $4000, which averages $2500. As virtually all of the other defendants have a culpability equal to or greater than Mr. Rhoades, it is reasonable that his restitution would be in the same range. Or, as defendant's counsel in the Eastern District of Louisiana aptly stated: "The general rule is $1,000 for victims in these particular cases who are represented by the public defender's office, $2,000 for those represented by private counsel." Mr. Rhoades would agree to any number in that range.

**Conclusion**

Based on the foregoing, Jonathan Rhoades respectfully requests that the Court impose the amounts previously stipulated with the 4 victims of $1000 each, and a similar amount to the victim Jessica.

> Respectfully submitted,
>
> THE DEFENDANT,
> Jonathan Rhoades

Dated: May 30, 2017

> /s/    Tracy Hayes
> Tracy Hayes
> Assistant Federal Defender
> 265 Church Street, Suite 702
> New Haven, CT. 06510
> Bar No. phv06527
> (203) 498-4200
> Email: tracy_hayes@fd.org

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 30, 2017, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

> /s/ Tracy Hayes
> Tracy Hayes